RALPH M. LANE, ERIC U. LANE and FRANCIS A. LANE, Appellants, v. ST. LOUIS UNION TRUST COMPANY, a Corporation, Trustee, and JOHN P. CULLINANE, Administrator of the Estate of MAX RICHARD WACKWITZ, and ST. LOUIS UNION TRUST COMPANY, Executor of the Estate of JULIA LANE WACKWITZ, Deceased.—No. 39723.—201 S. W. (2d) 288.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*J. Porter Henry* and *Green, Henry & Evans* for appellants.

*Detjen & Detjen* for respondent John P. Cullinane.

78

CLARK, J.—Appellants are the sons and only heirs of Julia Lane Wackwitz, who died in Switzerland in 1938. They were born of her first marriage to Ralph Lane who died in St. Louis, Missouri, in 1893. They are American citizens, as was their mother until her marriage in 1902 to Max Richard Wackwitz, an officer in the German army, and, of course, a citizen of that country. She and her second husband lived at various places in Germany and Switzerland. In 1908 they visited St. Louis and Mrs. Wackwitz there executed a trust instrument and her will. The trust instrument provided that the income from the trust fund, consisting of bonds of the value of $25,000.00, should be paid to her during her life and then: if she should not survive her husband, the trustee at her death, upon receipt of lawful agreement in writing properly executed by her husband waiving all his marital rights in her estate, should pay the trust fund to her husband; in the event he should refuse to execute such waiver the trust fund should be paid to her executor as a part of her estate and be distributed according to her last will.

Her will provided a legacy for her maid, devised the residue of her estate to her three sons in equal shares, and contained this clause:

"Pursuant to an understanding with my husband, Major Max Wackwitz, and with his full assent, I make no provision for him in this will."

The St. Louis Union Trust Company was named as trustee and as executor. After the execution of the will and the trust instrument Mrs. Wackwitz and her husband returned to Europe and lived at various places in Germany and Switzerland. She probably stayed most of the time in the latter country. Her husband was frequently away from her for varying periods of time and after some time in 1935 did not live with her. She died in Switzerland, July 25, 1938. Shortly thereafter her husband executed a written instrument

and delivered same to the trustee claiming the trust fund and relinquishing all his rights in the estate of his deceased wife.

Appellants, heirs and devisees of Mrs. Wackwitz, brought suit in equity in the circuit court of St. Louis to prevent Wackwitz from taking the trust fund. Defendants were Wackwitz and the trustee and executor of Mrs. Wackwitz's estate. Wackwitz, after entering his appearance and filing answer, died and suit was revived against his administrator. The petition alleged: that the trust instrument constituted a jointure; that Wackwitz abandoned his wife without a reasonable cause and continued to live separate and apart from her for the space of one whole year next preceding her death; that by Section 337, Revised Statutes Missouri 1939, [Mo. R. S. A.] Wackwitz was barred from jointure, and all interest in his wife's estate. The allegations of the petition were placed in issue by the answers of the defendants. The trial court dismissed the petition holding: that the trust instrument did not create a jointure within the meaning of Section 337; that Section 337 could not operate to bar the rights of defendant Wackwitz and does not apply to the conduct of persons who were citizens and residents of foreign countries for more than thirty years prior to the death of Mrs. Wackwitz; and that the laws of Missouri do not govern in determining whether there was an abandonment in Switzerland, nor the effect of such abandonment, if any, on the rights of Wackwitz in his wife's estate.

Section 337, so far as it can apply to this case, provides: ". . . And if a husband leave his wife . . . , or abandon her without a reasonable cause and continue to 'live separate and apart from her for the space of one whole year next preceding her death . . . he shall be forever barred from his inheritance, jointure, homestead, curtesy and statutory allowances in the real and personal estate of the wife, unless his wife be voluntarily reconciled to him and suffer him to dwell with her."

On the question of abandonment the only evidence offered showed that Mrs. Wackwitz treated her husband well and her conduct was good; that Wackwitz became sullen and restless; left home frequently for a few days or months without his wife knowing his destination; contributed nothing to her support; did not live with her after 1935, and was not present during her last illness and death.

In the briefs in this court much space is occupied in argument and citations as to whether the trust instrument does or does not constitute a jointure. The question is of little, if any, significance. The trust instrument did not grant to the husband any vested interest in the wife's property or in the trust fund. It did not amount to a contract. It was an offer by her to him that if he survived her he could take the trust fund upon consideration that he waive his marital rights in her estate. In order for the offer to be translated into a binding contract between the surviving husband and his wife's es-

tate, there must have been, at the time of acceptance, a valid consideration upon which the contract could rest. If at the time of acceptance, by virtue of the operation of Section 337, the husband had no marital rights and no reasonable claim to such rights in his wife's estate, the consideration failed and the contract is void.

At the time the trust instrument was executed the statute as then worded did not provide for the forfeiture of a husband's marital rights in his wife's estate, but only provided for forfeiture by a wife. [Section 2953, R. S. Mo. 1899.] In 1919 the statute, now Section 337, was amended to its present form, [Laws of 1919, page 104]. Various statutory changes have enlarged the marital rights of a husband ▆ since the trust instrument was executed. We do not believe the instant case is affected by the changes in the husband's marital rights or by the fact that there was no provision for forfeiture of such rights at the date of the trust instrument. That instrument constituted an offer which could not be accepted until the death of Mrs. Wackwitz. It was a continuing offer until that time for she did nothing to revoke it during her life. Her will, which could speak only as of the date of her death, contained the clause heretofore quoted which must refer to the trust and shows that she regarded the offer as still in force.

The question is: Was there a consideration for the acceptance by Wackwitz of his wife's offer, at the time it was accepted, not at the time it was made?

We agree, as argued by respondents, that the general, if not universal, rule is that the rights of succession of a husband to personal property of his wife is governed by the law of the domicile of the owner at death. [11 Am. Jur., p. 379, section 92; 88 A. L. R. 862, II; Richardson v. Lewis, 21 Mo. App. 531; Keeney v. Freeman, 236 Mo. App. 260, 151 S. W. (2d) 532; Comerford v. Coulter, 82 Mo. App. 362, 365; 30 C. J., p. 508, section 8.] This rule is confirmed by our statute, Section 253, Revised Statutes Missouri, 1939, [Mo. R. S. A.] but, in the instant case, there was no pleading or proof as to what, if any, marital rights Wackwitz would have, or what conduct, if any, on his part would forfeit such rights under the laws of his wife's domicile. We cannot judicially notice the law of Germany. [Restatement, Conflict of Laws, section 621; Charlotte v. Choteau, 25 Mo. 465.] In the absence of proof of such law we must apply the law of Missouri. [Lyons v. Met. St. Ry., 253 Mo. 143, 161 S. W. 726; Gorman v. Terminal Ry., 325 Mo. 326, 28 S. W. (2d) 1023; Wooldridge v. Bryan, 307 Mo. 234, 270 S. W. 658; Menard v. Goltra, 328 Mo. 368, 379, 40 S. W. (2d) 1053.] In those cases and many others we applied the law of Missouri in the absence of proof of the laws of other states of this country. In the following case the same method was followed in the absence of proof of the laws of foreign countries: Doiron v. Vacuum Oil Co., 164 La. 15, 113 So. 748; (Law of Canada)

Galard v. Winans, 111 Md. 434, 74 Atl. 626; (Law of France) Savage v. O'Neil, 44 N. Y. 298, in which it is stated: "There is no proof what the laws of Russia in reference to the property and rights of married women were, and there is no presumption that the common law was in force there. . . . The courts cannot take notice of the laws of Russia unless they are proved; and in the absence of proof our own law must of necessity furnish the rule for the guidance of our courts."

Respondents claim that the burden was on the plaintiffs (appellants) to allege and prove the foreign law. That would be true if they were claiming a forfeiture of Wackwitz's rights by virtue of a foreign law, but appellants claim that the law of Missouri applies, and so it does in the absence of proof of the foreign law. In such situation, proof of the foreign law is a matter of defense.

Under Section 337, Wackwitz, by abandoning his wife without cause, forfeited his marital rights in her estate and had nothing to offer as a consideration for his acceptance of the trust fund. Even if the statute did not have that conclusive effect, it declares a wholesome principle of public policy and morality which would prevent the courts of this state from giving sanction to such a claim. The courts of this and other states have often refused to enforce contracts or remedies repugnant to the public policy of the forum. [Maxey v. Railey and Bros. Banking Co. (Mo. App.), 57 S. W. (2d) 1091; Jamison Coal and Coke Co. v. Goltra, 143 Fed. (2d) 889; Windt v. Lindy, 169 Tenn. 210, 84 S. W. (2d) 99; Wilson v. Craig, 175 Mo. 362, 75 S. W. 419; Restatement, Conflict of Laws, section 612.]

Counsel for Wackwitz's administrator, respondent, in their brief in this court, for the first time, attempt to inject a constitutional question, claiming that to deny his right to the trust property would be a denial of his rights under Article I, Section 10 of the United States Constitution, Article II, Section 15 of the Missouri Constitution of 1875, and Article I, Section 13 of the Missouri Constitution of 1945. Those provisions forbid the impairment of contracts. Aside from the fact that the constitutional question is not timely raised there is no merit in the contention. There was no impairment of a contract by the enactment of Section 337. It was enacted after the offer contained in the trust instrument, but before the attempted acceptance by Wackwitz, at which time the proposed contract was invalid for want of a consideration and for violation of public policy.

It follows that the decree of the trial court should be and is hereby reversed. All concur.